**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE**

James R. Kalloch

    v.                             Civil No. 11-cv-522-JL

Michael J. Astrue, Commissioner,
Social Security Administration

## REPORT AND RECOMMENDATION

Pursuant to 42 U.S.C. § 405(g), James Kalloch moves to reverse the Commissioner's decision denying his application for Social Security disability insurance benefits, or DIB, under Title II of the Social Security Act, 42 U.S.C. § 423, and for supplemental security income, or SSI, under Title XVI, 42 U.S.C. § 1382. The Commissioner, in turn, moves for an order affirming his decision. For the reasons that follow, I recommend that the matter be remanded to the Commissioner.

### Standard of Review

The applicable standard of review in this case provides, in pertinent part:

> The [district] court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing. The findings of

the Commissioner of Social Security as to any fact, if
supported by substantial evidence, shall be conclusive
. . . .

42 U.S.C. § 405(g) (setting out the standard of review for DIB
decisions); see also 42 U.S.C. § 1383(c)(3) (establishing §
405(g) as the standard of review for SSI decisions).  However,
the court "must uphold a denial of social security . . .
benefits unless 'the [Commissioner] has committed a legal or
factual error in evaluating a particular claim.'"  Manso-Pizarro
v. Sec'y of HHS, 76 F.3d 15, 16 (1st Cir. 1996) (quoting
Sullivan v. Hudson, 490 U.S. 877, 885 (1989)).

As for the statutory requirement that the Commissioner's
findings of fact be supported by substantial evidence, "[t]he
substantial evidence test applies not only to findings of basic
evidentiary facts, but also to inferences and conclusions drawn
from such facts."  Alexandrou v. Sullivan, 764 F. Supp. 916,
917-18 (S.D.N.Y. 1991) (citing Levine v. Gardner, 360 F.2d 727,
730 (2d Cir. 1966)).  In turn, "[s]ubstantial evidence is 'more
than [a] mere scintilla.  It means such relevant evidence as a
reasonable mind might accept as adequate to support a
conclusion.'"  Currier v. Sec'y of HEW, 612 F.2d 594, 597 (1st
Cir. 1980) (quoting Richardson v. Perales, 402 U.S. 389, 401
(1971)).  But, "[i]t is the responsibility of the [Commissioner]
to determine issues of credibility and to draw inferences from
the record evidence.  Indeed, the resolution of conflicts in the

evidence is for the [Commissioner], not the courts." <u>Irlanda</u>
<u>Ortiz v. Sec'y of HHS</u>, 955 F.2d 765, 769 (1st Cir 1991)
(citations omitted).  Moreover, the court "must uphold the
[Commissioner's] conclusion, even if the record arguably could
justify a different conclusion, so long as it is supported by
substantial evidence." <u>Tsarelka v. Sec'y of HHS</u>, 842 F.2d 529,
535 (1st Cir. 1988).  Finally, when determining whether a
decision of the Commissioner is supported by substantial
evidence, the court must "review[] the evidence in the record as
a whole." <u>Irlanda Ortiz</u>, 955 F.2d at 769 (quoting <u>Rodriguez v.</u>
<u>Sec'y of HHS</u>, 647 F.2d 218, 222 (1st Cir. 1981)).

## Background

The parties have submitted a Joint Statement of Material
Facts, document no. 17.  That statement is part of the court's
record and will be summarized here, rather than repeated in
full.

Until May 1, 2007, the alleged onset date of Kalloch's
claimed disability, his primary occupation was car and truck
repair.

Kalloch was diagnosed with Lyme disease in 2004.  <u>See</u>
Administrative Transcript ("Tr.") 198.  Subsequently, he has had
both positive and negative tests for Lyme antibodies suggesting
that, at times, his Lyme disease has been inactive.  Kalloch's

treatment has consisted of several courses of doxycycline, nonsteroidal anti-inflammatory drugs, and other medications. Since 2007, he has presented to health-care providers complaining about a wide variety of symptoms that he attributes to his Lyme disease or, in some cases, to medications he has been prescribed as treatment for Lyme disease.  Those symptoms include, but are not limited to: malaise; fatigue; headaches; diffuse joint pain; cramping in his legs and feet; myalgias;[1] arthralgias;[2] myofascial pain; body aches; eye pain; sharp pins-and-needles skin pain; multiple painful areas; left-sided burning pain in his neck, back, flank, and foot; pain and muscle spasms in his neck; and hip pain.

On June 2, 2010, Dr. Jonathan Jaffe completed a Physical Residual Functional Capacity ("RFC") Assessment on Kalloch.  Dr. Jaffe opined that Kalloch could: (1) lift twenty pounds occasionally and ten pounds frequently; (2) stand and/or walk, and sit, both with normal breaks, for about six hours in an eight-hour workday; and (3) push and/or pull without any limitation other than that for lifting and/or carrying.  See Tr. 379.  In terms of postural limitations, Dr. Jaffe opined that Kalloch could frequently climb ramps/stairs and stoop, and could

---

[1] Myalgia is "[m]uscular pain."  Stedman's Medical Dictionary 1265 (28th ed. 2006).

[2] Arthralgia is "[p]ain in a joint."  Stedman's, supra, at 159.

occasionally climb ladders/ropes/scaffolds, balance, kneel, crouch, and crawl.  See Tr. 380.  He also determined that Kalloch had no manipulative, visual, communicative, or environmental limitations.  See Tr. 381-82.

Kalloch received a hearing on his claim before an Administrative Law Judge ("ALJ").  At that hearing, the ALJ asked Kalloch to explain why he was unable to work and, more specifically, asked about: (1) the frequency of Kalloch's migraine headaches; (2) the effect of the medication he took for those headaches; (3) his treatment for Lyme disease; (4) the general progression of his condition; (5) his activities of daily living and his ability to care for himself; (6) his hobbies; (7) his current medications; (8) the frequency of his doctor visits; (9) hospitalizations; and (10) changes in weight.

In response to questions from the ALJ and his counsel, Kalloch testified that he: (1) did odds and ends around the house, such as vacuuming, and did small repairs on his car; (2) recently spent about an hour helping his father with a painting project; (3) has frequent pain at night that keeps him from sleeping and results in fatigue the next day; (4) has suffered from migraines for about seven years; (5) can go a week or two without getting a migraine, but can also have a week with constant migraines; (6) stopped working in 2007 due to pain, fatigue, migraines, sensitivity to noise in the workplace, and

mental confusion that resulted in dangerous mistakes using equipment; (7) sometimes takes walks, depending on how he is feeling; (8) uses the computer at the public library; (9) suffers from pain in the shoulders, back, hips, and knees when he sits for extended periods of time; (10) occasionally works on friends' motorcycles if he is feeling up to it; (11) has trouble reading, watching television, and using the computer, due to vision problems; (12) occasionally visits friends, but sometimes has to leave when he cannot tolerate the noise; (13) has had trouble at times bathing himself due to dizziness; and (14) takes a nap of between thirty minutes and two hours each day, due to general fatigue and to rest his eyes.

After the hearing, the ALJ issued a decision that includes the following relevant findings of fact and conclusions of law:

3.  The claimant has the following severe impairment: Lyme Disease (20 CFR 404.1520(c) and 416.920(c)).

. . . .

4.  The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

. . . .

5.  After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b).

. . . .

> 6.   The claimant is unable to perform any past
> relevant work (20 CFR 404.1565 and 416.965).
>
> . . . .
>
> 10.   Considering the claimant's age, education, work
> experience, and residual functional capacity, there
> are jobs that exist in significant numbers in the
> national economy that the claimant can perform (20 CFR
> 404.1569, 404.1569(a), 416.969, and 416.969(a)).

Tr. 12, 17, 19.

In the part of her decision devoted to determining whether Kalloch had a severe impairment, the ALJ noted that: (1) in November of 2007, Kalloch was not too fatigued to help a friend build what Kalloch referred to as a "teepee," <u>see</u> Tr. 14, 282; (2) in July of 2010, Kalloch attempted to work, <u>see</u> Tr. 16.  In the part of her decision devoted to determining Kalloch's RFC, but not the part of the RFC discussion related to her assessment of Kalloch's credibility, the ALJ noted that Kalloch "was able to do small repairs on his car, help his father paint and do other activities," Tr. 18, and that "he does light reading, goes to a public library for computer access, and likes to work on friends' motorcycles if [he] feels like it . . . enjoys watching history and discovery shows on TV . . . shops once or twice a week . . . hunts for deer when he can, watches races and talks on the telephone with friends," Tr. 18-19.

**Discussion**

According to Kalloch, the ALJ's decision should be reversed and he should be awarded benefits, or the case should be remanded, because the ALJ failed to: (1) find that he suffers from a severe mental impairment; and (2) properly assess his subjective complaints of pain. The Commissioner disagrees, categorically. Kalloch's second argument is persuasive, and dispositive.

A. The Legal Framework

To be eligible for disability insurance benefits, a person must: (1) be insured for such benefits; (2) not have reached retirement age; (3) have filed an application; and (4) be under a disability. 42 U.S.C. §§ 423(a)(1)(A)-(D). To be eligible for supplemental security income, a person must be aged, blind, or disabled, and must meet certain requirements pertaining to income and assets. 42 U.S.C. § 1382(a). The only question in this case is whether Kalloch was under a disability.

For the purpose of determining eligibility for disability insurance benefits,

> [t]he term "disability" means . . . inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A); see also 42 U.S.C. § 1382c(a)(3)(A)

(setting out a similar definition of disability for determining

eligibility for SSI benefits).  Moreover,

> [a]n individual shall be determined to be under a
> disability only if his physical or mental impairment
> or impairments are of such severity that he is not
> only unable to do his previous work but cannot,
> considering his age, education, and work experience,
> engage in any other kind of substantial gainful work
> which exists in the national economy, regardless of
> whether such work exists in the immediate area in
> which he lives, or whether a specific job vacancy
> exists for him, or whether he would be hired if he
> applied for work. . . .

42 U.S.C. § 423(d)(2)(A) (pertaining to DIB benefits); see also

42 U.S.C. § 1382c(a)(3)(B) (setting out a similar standard for

determining eligibility for SSI benefits).

To decide whether a claimant is disabled for the purpose of

determining eligibility for either DIB or SSI benefits, an ALJ

is required to employ a five-step process.  See 20 C.F.R. §§

404.1520 (DIB) and 416.920 (SSI).

> The steps are: 1) if the [claimant] is engaged in
> substantial gainful work activity, the application is
> denied; 2) if the [claimant] does not have, or has not
> had within the relevant time period, a severe
> impairment or combination of impairments, the
> application is denied; 3) if the impairment meets the
> conditions for one of the "listed" impairments in the
> Social Security regulations, then the application is
> granted; 4) if the [claimant's] "residual functional
> capacity" is such that he or she can still perform
> past relevant work, then the application is denied; 5)
> if the [claimant], given his or her residual
> functional capacity, education, work experience, and
> age, is unable to do any other work, the application
> is granted.

Seavey v. Barnhart, 276 F.3d 1, 5 (1st Cir. 2001) (citing 20
C.F.R. § 416.920).

Kalloch bears the burden of proving that he is disabled.
See Bowen v. Yuckert, 482 U.S. 137, 146 (1987).  He must do so
by a preponderance of the evidence.  See Mandziej v. Chater, 944
F. Supp. 121, 129 (D.N.H. 1996) (citing Paone v. Schweiker, 530
F. Supp. 808, 810-11) (D. Mass. 1982)).  Finally,

> [i]n assessing a disability claim, the [Commissioner]
> considers objective and subjective factors, including:
> (1) objective medical facts; (2) [the claimant]'s
> subjective claims of pain and disability as supported
> by the testimony of the [claimant] or other witness;
> and (3) the [claimant]'s educational background, age,
> and work experience.

Mandziej, 944 F. Supp. at 129 (citing Avery v. Sec'y of HHS, 797
F.2d 19, 23 (1st Cir. 1986); Goodermote v. Sec'y of HHS, 690
F.2d 5, 6 (1st Cir. 1982)).

B. Kalloch's Argument

Kalloch argues that the ALJ erred by failing to properly
assess his credibility.[3]  The court agrees.

_____

[3] Kalloch's other argument, i.e., that the ALJ erred by
failing to determine that he had a severe mental impairment,
does not appear to be meritorious.  See Hickman v. Comm'r of
Soc. Sec. Admin., 399 F. App'x 300, 302 (9th Cir. 2010) ("Any
error in the ALJ's failure to include a reading disorder as one
of Hickman's severe impairments at step two of the analysis is
harmless.  The ALJ found Hickman suffered from other severe
impairments and, thus, step two was already resolved in
Hickman's favor.") (citing Burch v. Barnhart, 400 F.3d 676, 682
(9th Cir. 2005); see also Heatly v. Comm'r of Soc. Sec., 382 F.
App'x 823, 824-25 (11th Cir. 2010) (same) (citations omitted).

According to Social Security Ruling ("SSR") 96-7p, "an individual's statement(s) about his or her symptoms is not in itself enough to establish the existence of a physical or mental impairment or that the individual is disabled."  1996 WL 374186, at *2.  "A symptom is an individual's own description of his or her physical or mental impairment(s)."  Id.  When "symptoms, such as pain, fatigue, shortness of breath, weakness, or nervousness," id., are alleged, SSR 96-7p prescribes the following evaluation process:

> * First, the adjudicator must consider whether there is an underlying medically determinable physical or mental impairment(s) – i.e., an impairment(s) that can be shown by medically acceptable clinical and laboratory diagnostic techniques – that could reasonably be expected to produce the individual's pain or other symptoms. . . .  If there is no medically determinable physical or mental impairment(s), or if there is a medically determinable physical or mental impairment(s) but the impairment(s) could not reasonably be expected to produce the individual's pain or other symptoms, the symptoms cannot be found to affect the individual's ability to do basic work activities.
>
> * Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the individual's pain or other symptoms has been shown, the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities.  For this purpose, whenever the individual's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the adjudicator must make a finding

on the credibility of the individual's statements
based on a consideration of the entire case record.

<u>Id.</u>  Moreover:

> When additional information is needed to assess the
> credibility of the individual's statements about
> symptoms and their effects, the adjudicator must make
> every reasonable effort to obtain available
> information that could shed light on the credibility
> of the individual's statements.  In recognition of the
> fact that an individual's symptoms can sometimes
> suggest a greater level of severity of impairment than
> can be shown by the objective medical evidence alone,
> 20 CFR 404.1529(c) and 416.929(c) describe the kinds
> of evidence, including the factors below, that the
> adjudicator must consider in addition to the objective
> medical evidence when assessing the credibility of an
> individual's statements:
>
>> 1. The individual's daily activities;
>>
>> 2. The location, duration, frequency, and
>> intensity of the individual's pain or other
>> symptoms;
>>
>> 3. Factors that precipitate and aggravate the
>> symptoms;
>>
>> 4. The type, dosage, effectiveness, and side
>> effects of any medication the individual takes or
>> has taken to alleviate pain or other symptoms;
>>
>> 5. Treatment, other than medication, the
>> individual receives or has received for relief of
>> pain or other symptoms;
>>
>> 6. Any measures other than treatment the
>> individual uses or has used to relieve pain or
>> other symptoms (e.g., lying flat on his or her
>> back, standing for 15 to 20 minutes every hour,
>> or sleeping on a board); and
>>
>> 7. Any other factors concerning the individual's
>> functional limitations and restrictions due to
>> pain or other symptoms.

Id. at *3.  In this circuit, the seven considerations listed above are commonly referred to as the Avery factors.

SSR 96-7p outlines a specific staged inquiry that consists of the following questions, in the following order: (1) does the claimant have an underlying impairment that could produce the symptoms he or she claims?; (2) if so, are the claimant's statements about his or her symptoms substantiated by objective medical evidence?; and (3) if not, are the claimant's statements about those symptoms credible?  See Baker v. Astrue, Civ. No. 08-11812-RGS, 2010 WL 3191452, at *8 (D. Mass. Aug. 11, 2010) ("If after evaluating the objective findings, the ALJ determines that the claimant's reports of symptoms are significantly greater than what could be reasonably anticipated from the objective evidence, the ALJ must then consider other relevant information."); Caille v. Comm'r of Soc. Sec., Civ. No. 09-1305 (JAF), 2010 WL 1424725, at *3 (D.P.R. Apr. 6, 2010) (explaining that "before weigh[ing] the credibility of a claimant's statements about pain . . . [the] ALJ must first find a lack of support in the objective medical evidence for the allegations of pain").

An ALJ's credibility determination must be supported by substantial evidence, see Irlanda Oritz, 955 F.2d at 769, and "is entitled to deference, especially when supported by specific findings," Frustaglia v. Sec'y of Health & Human Servs., 829

13

F.2d 192, 195 (1st Cir. 1987) (citing Da Rosa v. Sec'y of Health & Human Servs., 803 F.2d 24, 26 (1986)).  That said, an ALJ's "determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight."  SSR 96-7p, 1996 WL 374186, at *2 (emphasis added).  In other words, "[i]t is not sufficient for the adjudicator to make a single, conclusory statement that 'the individual's allegations have been considered' or that 'the allegations are (or are not) credible.'"  Id.  As Judge Zobel recently explained:

> An ALJ is free to disbelieve [a claimant]'s subjective testimony; however, he or she must make specific findings as to the relevant evidence he considered in determining to disbelieve [him or her]. Da Rosa, 803 F.2d at 26.  Avery v. Astrue, CIV.A. 06-30143-KPN, 2007 WL 2028881 (D. Mass. July 10, 2007). Generally, even when an ALJ sufficiently develops the record by inquiring into the Avery factors, he or she must still perform a thorough discussion and analysis and identify the weight [s]he gave or (decided not to give) to [the claimant]'s testimony with regard to all six Avery factors.  Id. at *7 (internal citations omitted).

Sarmento v. Astrue, Civ. Action No. 10-11724-RWZ, 2012 WL 1559705, at *8 (D. Mass. May 2, 2012) (internal quotation marks omitted).  To perform a proper discussion and analysis, the ALJ "must identify what testimony is not credible and what evidence

undermines the claimant's complaints." Balaguer v. Astrue, ___

F. Supp. 2d ___, ___, 2012 WL 3090041, at *8 (D. Mass. July 31,

2012) (quoting Bazile v. Apfel, 113 F. Supp. 2d 181, 187 (D.

Mass. 2000); citing Lester v. Chater, 81 F.3d 821, 834 (9th Cir.

1995)).

Here, the ALJ's decision includes the following run-down of

Kalloch's subjective complaints:

> He testified that he now cannot work because of
> fatigue primarily.  He cannot predict how he will feel
> on any day and has problems driving.  He has alot of
> pain at night and had problems sleeping.  He had
> migraine headaches, dizziness, head "rushes" from
> noise, tiredness, muscle aches and pains,
> rage/overreaction, memory problems and other flu-like
> symptoms.  His migraine headaches occur only every one
> or two weeks[4] and he has pain behind his eyes.  . . .
> He has joint pain after sitting for prolonged periods
> of time.

---

[4] With regard to his migraines, Kalloch testified as
follows:

Q How often do you have migraines?

A It fluctuates, there might be a week or two where
[I] won't have much of a headache, what I consider a
migraine.  It might be like scalp pain.  It might be
eye pain; I've had a lot of eye pain behind my eyes,
overwatering, underwatering in my eyes.  Migraines
sometimes I'll have a week where it's just nothing but
migraines all the time.  I've got to take Fiorinal for
that.  I'm allowed two pills a day.  If two pills
don't work, than that's all I can take.

Tr. 44.  So, when she reported Kalloch's testimony about having
migraines "only every one or two weeks," Tr. 18, the ALJ did not
report his directly associated testimony that he could suffer
from migraines for up to a week at a time, a condition that
might well interfere with a person's ability to work.

. . . He complained of dizziness, vertigo, impaired
memory, pain and headaches.  . . .  Other symptoms he
reported were low energy, weakness, cognitive problems
and muscle cramps.  He states he has "Lyme rage" where
reactions do not fit the situation but this is not
supported by any objective medical evidence of record.

Tr. 18-19.

After describing Kalloch's subjective complaints, the ALJ

determined that his "medically determinable impairments could

reasonably be expected to cause the alleged symptoms."  Tr. 19.

She then went on to make the following credibility assessment:

The claimant's credibility is low given the lack of
objective medical evidence of record supporting his
subjective complaints; while he does have valid
symptoms from his impairment[,] the record, including
the claimant's testimony, does not show that they are
so severe as to cause disabling functional
limitations.  The objective medical evidence does not
show that the claimant experiences these symptoms on a
regular basis or with sufficient frequency to have
much impact on his ability to perform basic work
activities.  There is little in the record to support
the length of time his symptoms last, how frequently
they occur and how intense they occur.  Realistically,
if he had all the symptoms he complained of on a
regular basis, even with mild intensity[,] he would be
unable to perform activities of daily life which is
not what he alleges.

Id.

The court begins by parsing the ALJ's credibility

assessment.  The first sentence makes a passing reference to

Kalloch's testimony, but refers to nothing specific in that

testimony.  Thus, that sentence does little if anything more

than reject Kalloch's subjective complaints based on a lack of

objective medical evidence.  And, while the ALJ says that
Kalloch "does have valid symptoms," she does not indicate which
of Kalloch's various symptoms are "valid" and which are not.
The second sentence pertains only to the objective medical
evidence.  The third sentence refers more generally to a lack of
evidence in "the record," but does not indicate any particular
part(s) of the record to which it refers.  Therefore, it is
impossible to tell whether the third sentence follows the second
sentence in referring exclusively to the objective medical
evidence or was intended to refer to both the objective medical
evidence and to Kalloch's reports about his symptoms.  In the
fourth sentence, the ALJ says that "if [Kalloch] had all the
symptoms he complained of on a regular basis, even with mild
intensity[,] he would be unable to perform activities of daily
life which is not what he alleges."  Tr. 19.  But, the ALJ does
not identify: (1) any specific statement Kalloch made about his
symptom(s); or (2) any activity of daily living he says he can
perform, the performance of which undermines some statement he
made about his symptoms.  There are several problems with the
ALJ's credibility determination.

    First, notwithstanding the long list of subjective
complaints the ALJ identifies in her decision, she does not

mention any of them the paragraph devoted to credibility.[5]
Without an adequate identification of the statement(s) at issue,
it is difficult, at best, to use the Avery factors to perform
any kind of meaningful credibility analysis.  See Weaver v.
Astrue, No. 10-cv-340-SM, 2011 WL 2580766, at *6 (D.N.H. May 25,
2011) ("As a starting point for the following analysis [of an
ALJ's credibility determination], it is necessary to identify
the statement(s) at issue."); Balaguer, 2012 WL 3090041, at *8
(explaining that the ALJ "must identify what testimony is not
credible").

      Next, the ALJ's discussion of credibility is longer than,
but no more informative than, the kind of conclusory credibility
assessment that is prohibited by SSR 96-7p.  As in Weaver,
"there is no sentence anywhere in [the ALJ's] decision that
says, in effect, 'I find the [following] statements about pain
[or other symptoms] to be less than credible because . . . .'"
2011 WL 2580766, at *7.  So, as in Sarmento, "the ALJ did
sufficiently develop the record with regard to the Avery factors
[at the hearing], [but] did not adequately explain either her
application of them, or the reason for disregarding any of the
evidence supportive of [the claim]," 2012 WL 1559705, at *8, an

_____

      [5] As an ancillary matter, while the ALJ speaks of "[t]he
claimant's credibility," Tr. 19 (emphasis added), the relevant
issue is not Kalloch's credibility, but, rather, "the
credibility of [Kalloch]'s statements," SSR 96-7p, 1996 WL
374186, at *2 (emphasis added).

analysis that should be performed by "identify[ing] what testimony is not credible and what evidence undermines the claimant's complaints," Balaguer, 2012 WL 3090041, at *8.

As best the court can tell, the ALJ's position is that Kalloch's subjective complaints (which she does not identify) were not credible because: (1) they were not supported by the objective medical evidence; and (2) a person suffering from the symptoms Kalloch alleged would be unable to perform any of the activities of daily living.  The court begins with the ALJ's second justification for her credibility assessment.

The theory supporting the ALJ's second justification appears to be that evidence that Kalloch engaged in any activity at all is sufficient to contradict, and destroy the credibility of, all of Kalloch's statements about his symptoms.  What the ALJ does not do, however, is identify any specific testimony by Kalloch about his activities that is inconsistent with any claim he made about his physical abilities, as limited by pain, fatigue, or any other symptom.  That, of course, is the usual way to discount the credibility of a claimant's subjective complaint(s).  For example, in Troncoso v. Astrue, Civ. Action No. 11-10726-RGS, 2012 WL 441753 (D. Mass. Feb. 9, 2012), Judge Stearns affirmed the ALJ's determination that a claimant's subjective complaints lacked credibility when the claimant: (1) "testified that he was only able to perform fifteen to twenty-

five minutes of housework per day, could only sit for twenty-
five to thirty minutes, and could only lift five to eight
pounds, and that he had had these limitations for more than four
to five years," id. at *5; but (2) also "testified that he had
previously lived by himself for a year, that he drove to his
girlfriend's home each day where he often babysat his
girlfriend's two children, aged six and eleven, a task that he
had been performing for the past three to four years," id.  What
the ALJ in Troncoso did, but the ALJ in this case did not do,
was to identify specific claimant testimony about daily
activities that was inconsistent with the claimant's allegations
about limitations imposed by his medical condition(s).

When all is said and done, the ALJ's second justification
for discounting the credibility of Kalloch's subjective
complaints is an analytical shortcut that, at least implicitly,
overstates what Kalloch said about his symptoms and thus
minimizes the amount of activity necessary to make his
subjective complaints inconsistent with his statements about the
activities he was still able to perform.  Accordingly, as the
ALJ has framed her discussion of the issue, Kalloch's testimony
about the activities he is able to perform is not substantial
evidence that his statements about pain and other symptoms are

not credible.[6]  It may be that the evidence in this case could support a negative credibility assessment, but the ALJ's analysis falls well short of being "sufficiently specific to make clear to [Kalloch] and to [this court] the weight the [ALJ] gave to [Kalloch]'s statements and the reasons for that weight," SSR 96-7p, 1996 WL 374186, at *2.

After eliminating Kalloch's testimony about his activities as a basis for finding his subjective complaints not to be credible, nothing remains to support the ALJ's determination other than her reliance on the lack of objective medical evidence to support Kalloch's claims.  But, as SSR 96-7p explains, "[a]n individual's statements about the intensity and persistence of pain or other symptoms or about the effect the symptoms have on his or her ability to work may not be disregarded solely because they are not substantiated by

---

[6] In making this determination, the court further notes that some of Kalloch's testimony about his activities includes qualifications that the ALJ seems not to have considered. Specifically, Kalloch testified that he: (1) was able to help his father paint "for about an hour," Tr. 42; (2) gets out and tries to stay active "[i]f [he] can," Tr. 48; (3) might take a walk "depending on how [he is] feeling," id.; and (4) occasionally works on friends' motorcycles "if [he is] feeling up to it," id. at 49.  As the court of appeals for this circuit recently stated in an unpublished opinion, "there is a 'difference between a person's being able to engage in sporadic activities and [his] being able to work eight hours a day five consecutive days of the week.'" Ormon v. Astrue, No. 11-2107 (2012 WL 3871560), slip op. at 15 (1st Cir. Sept. 7, 2012) (per curiam) (quoting Carradine v. Barnhart, 360 F.3d 751, 755 (7th Cir. 2004)).

objective medical evidence."  1996 WL 374186, at *1; see also
Pires v. Astrue, 553 F. Supp. 2d 15, 23 (D. Mass. 2008) ("In
considering a [claimant]'s credibility, the ALJ may not reject
evidence elucidated during the Avery inquiry solely based on
inconsistency with objective medical evidence."); Clavette v.
Astrue, No. 10-cv-580-JL, 2012 WL 472757, at *9 (D.N.H. Feb. 7,
2012) ("Relying on a lack of objective medical evidence as the
sole support for a negative credibility determination is a legal
error."); Ault v. Astrue, No. 10-cv-553-JL, 2012 WL 72291, at *5
(D.N.H. Jan. 10, 2012) ("An ALJ, however, cannot base
credibility findings solely on the absence of objective medical
evidence . . .").  As explained by Judge Zobel, "a disconnect
between the objective medical record and [a claimant]'s
testimony merely starts the credibility analysis; it does not
conclude it."  Sarmento, 2012 WL 1559705, at *8; see also
Valiquette v. Astrue, 498 F. Supp. 2d 424, 433 (D. Mass. 2007)
("But the existence of any such inconsistency [between the
objective medical evidence and the claimant's subjective
complaints] merely poses the question of the credibility of his
subjective complaints, it does not answer it."); Clavette, 2012
WL 472757, at *8 ("The lack of objective medical evidence
supporting a claimant's statements about [his] symptoms is what
triggers an ALJ's obligation to conduct a credibility

assessment, not evidence that the claimant's statements lack
credibility.").

　　　To summarize, notwithstanding the deference that is due to
an ALJ's credibility determination, see Frustaglia, 829 F.2d at
195, the credibility assessment in this case is not supported by
substantial evidence and, therefore, cannot be affirmed.  While
the ALJ did a good job of eliciting evidence on the Avery
factors at the hearing, her decision does not even include a
"factual summary of the evidence regarding the Avery factors,"
Pires, 553 F. Supp. 2d at 24, much less the discussion and
analysis of Kalloch's subjective complaints she was required to
perform, see Sarmento, 2012 WL 1559705, at *8.  Absent any
proper consideration of the Avery evidence, the ALJ's decision
rests entirely upon the lack of objective medical evidence to
support Kalloch's subjective complaints, which is insufficient
as a matter of law.  See id. at *9.  Thus, this case must be
remanded.  On remand, when assessing Kalloch's credibility, the
ALJ should take care to identify the particular statements to
which the analysis is directed and the Avery evidence that
discredits those statements.  See Bolobanic v. Astrue, No. 11-
cv-441-PB, 2012 WL 2049382, at *9 (D.N.H. May 21, 2012).

**Conclusion**

For the reasons given, I recommend that: (1) the Commissioner's motion for an order affirming his decision, document no. 16, be denied; and (2) Kalloch's motion to reverse the decision of the commissioner, document no. 13, be granted to the extent that the case is remanded to the Commissioner for further proceedings consistent with this report and recommendation, pursuant to sentence four of 42 U.S.C. § 405(g).

Any objections to this report and recommendation must be filed within fourteen days of receipt of this notice.  See Fed. R. Civ. P. 72(b)(2).  Failure to file objections within the specified time waives the right to appeal the district court's order.  See United States v. De Jesús-Viera, 655 F.3d 52, 57 (1st Cir. 2011), cert. denied, 132 S. Ct. 1045 (2012); Sch. Union No. 37 v. United Nat'l Ins. Co., 617 F.3d 554, 564 (1st Cir. 2010) (only issues fairly raised by objections to magistrate judge's report are subject to review by district court; issues not preserved by such objection are precluded on appeal).

_____
Landya McCafferty
United States Magistrate Judge


September 18, 2012
cc:  Kelie C. Schneider, Esq.
     Christopher J. Seufert, Esq.
     Gretchen Leah Witt, Esq.